Moore *v.* Remington.

————— • ○ ○ —————

## JOHN W. MOORE *vs.* RICHARD REMINGTON.

However discreditable an act may be, in a moral point of view, or as a breach of confidence, it does not follow that the act is on that account to be held a corrupt one, within the meaning of the law, so as to avoid a contract. It must be corrupt as tainted by fraud, or illegal as in violation of some rule of law or some statute, to warrant such a defense.

APPEAL from a judgment entered upon the report of a referee. The complaint was for services rendered, and for money paid out and expended for the defendant, and demanded judgment therefor in the sum of $315.50 and interest. The answer denied any indebtedness to the plaintiff. The action was referred to a referee, who found the following facts, viz:

That on or about the month of July, 1858, the defendant, Remington, being the owner by purchase of the Dorchester Manufacturing Company, located in the province of New Brunswick, and being desirous to become the owner of a majority of the stock of said company, made an agreement with Thomas B. Moore, at New Brunswick, to come to the city of New York and assist the defendant in obtaining the control of said stock, and that he, the defendant, would pay said Moore his reasonable expenses therefor. That in pursuance of said agreement, Moore came from New Brunswick to the city of New York, in the month of August, 1858, and remained until the 5th day of October, 1858, and rendered said defendant and his attorneys such assistance as he could, in obtaining the control and possession of a majority of the

stock of said Dorchester Manufacturing Company. That the reasonable expenses incurred by said Thomas B. Moore, while thus engaged in rendering said defendant assistance for the purpose aforesaid, amounted to the sum of $107.50. That on the 11th day of November, 1859, the said Thomas B. Moore duly assigned the said demand against the defendant, for his expenses, to the plaintiff in this action, who is now the lawful owner of the same.

The deposition of Thomas B. Moore was read on the trial of the action. He testified as follows:

"I was requested by the defendant, in July, 1858, in New Brunswick, to come to New York, at his expense, to assist him with such information as I could afford, in regard to the stock of the Dorchester Manufacturing Company, and particularly to assist him in obtaining the ownership of the stock of John Carnes & Co., through the medium of an attachment to be issued out of some court in New York at the suit of Edward Allison, of St. Johns, New Brunswick, against the said John Carnes & Co., a large number of shares of which stock of said Carnes & Co. was in my possession; it being represented to me by said defendant that the only way it could be reached was by my coming to New York with the certificates of stock which I had, belonging to said Carnes & Co; I agreed to do as he requested. I came on to New York in the month of August, 1858, and afforded to him and his counsel, Mr. Runkle, all the assistance and information in my power in regard to the stock of Carnes & Co., and the stock of the company. The stock I held of Carnes & Co. was taken from me under an attachment by the sheriff of New York, at the suit of Allison, as devised by the defendant in this action." He further testified that he had no other business in New York; that he was in the employ of the defendant fifty-two days; and that his expenses in coming to New York, while there, and in returning to New Brunswick, were $107.50. It appeared in evidence that the witness Thomas B. Moore was, at the time of this transaction,

Moore *v.* Remington.

an attorney and barrister in the supreme court of New Brunswick. Allison, the plaintiff in the attachment suit, was a member of the firm of John Carnes & Co. The plaintiff having rested, the defendant's counsel moved the referee that the complaint and action be dismissed. *First.* On the ground that no cause of action had been made out. *Second.* That there was no proof that Thomas B. Moore ever rendered any services to the defendant. *Third.* That there was no evidence showing what were the expenses of said Moore in traveling from New Brunswick to New York, and back; that there was no proof of said Moore having incurred any expense for board while here, and that the evidence in reference to all his said expenses was of too indefinite a nature to render a report or decision, for any specific amount of damages, possible. *Fourth.* That the agreement in evidence, on which the plaintiff claims, was invalid, inasmuch as the same was contrary to public policy, good morals, and the general policy of the common law, and that the same was consequently absolutely null and void. *Fifth.* That the promise of the defendant to pay the expenses of said Thomas B. Moore was a *nudum pactum*, and wholly without consideration, for the same reasons. All of which objections were overruled by the referee, and the motion to dismiss the complaint and action was denied; to which the counsel for the defendant excepted.

The referee found, as a conclusion of law, that the defendant was indebted to the plaintiff in the sum of $107.50, with interest thereon from October 5th, 1858, amounting at the date of the report to the sum of $119.10, for which sum, besides costs, the plaintiff was entitled to judgment.

Various exceptions were taken to the report, and from the judgment entered thereon the defendant appealed.

*Barrett, Brinsmade & Barrett,* for the appellant.

*Boies & Cooper,* for the respondent.

*By the Court,* INGRAHAM, J.   However discreditable an act may be, in a moral point of view, or as a breach of confidence, it does not follow that the act is on that account to be held a corrupt one, within the meaning of the law, so as to avoid a contract.   It must be corrupt as tainted by fraud, or illegal as in violation of some rule of law or some statute, to warrant such defense.

Besides, in this case the act was done at the request of one of the partners, which would relieve it from the charge of having been done without any authority.

The claim appears to have been allowed only for actual expenses, or the equivalent therefor.   Although board was not actually paid, the evidence showed what the board was worth, and there was no ground for rejecting that item merely because it was not paid.   So far as the board was referred to, it may have been paid for in some other way, more expensive to Moore than actually paying the money.

Judgment affirmed, with costs.

[NEW YORK GENERAL TERM, May 6, 1861.   *Clerke, Gould* and *Ingraham,* Justices.]